UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
In re

                                     Chapter 11

SANDY HILLS, LLC,

                                     Case No.: 12-74482 (DTE)

                     Debtor.
-----------------------------------------------------------x

## MEMORANDUM DECISION AND ORDER

*Appearances:*

SilvermanAcampora LLP
*Attorneys for Empower to Rise, LLC*
By: Gerard R. Luckman, Esq.
Kenneth Silverman, Esq.
100 Jericho Quadrangle, Suite 300
Jericho, New York 11753


Stephen P. Gelfand, P.C.
*Attorneys for Debtor*
By: Stephen P. Gelfand, Esq.
548 West Jericho Turnpike
Smithtown, New York 11787


Office of the United States Trustee
By: Alfred M. Dimino, Esq.
Long Island Federal Courthouse
560 Federal Plaza, Room 560
Central Islip, NY 11722


HONORABLE DOROTHY T. EISENBERG, U.S. BANKRUPTCY JUDGE

Before the Court is the motion of Empower to Rise, LLC ("Empower") for allowance of its amended secured claim (the "Motion") pursuant to 11 U.S.C. §§ 502 and 506.

<u>BACKGROUND</u>

On April 28, 2005, Bank of Smithtown n/k/a People's United Bank (the "Bank") and the Debtor entered into a mortgage and security agreement (the "Mortgage") which secures a promissory note (the "Note", together with the Mortgage, the "Loan") in the aggregate principal amount of up to approximately $2 million to develop 39.374 acres of vacant land located at Bailey and Rocky Point Yaphank Road, Brookhaven, New York (the "Real Property") that the Debtor acquired in 2003. The loan provided for interest at the rate of 7.75% and a default rate of 10.75%. On December 28, 2009, the Loan matured and the outstanding principal, accrued interest and other costs became immediately due and payable. The Debtor defaulted in payment of the outstanding principal and accrued interest. On July 23, 2010, the Bank commenced a foreclosure action against the Debtor (the "Action"). On April 5, 2012, a judgment of foreclosure and sale (the "Foreclosure Judgment") was entered in favor of the Bank for the outstanding principal and interest in the amount of $2,165,283.76 (the "Loan Balance"). A foreclosure sale was scheduled for a date in May 2012.

In April of 2012, representatives of the Debtor seeking a lender to buy out the Bank's interest in the Loan and foreclosure action, contacted Enrico Scarda, the principal of Empower. Prior to the foreclosure sale, the Bank sold and assigned the Loan and its interest in the foreclosure action to Empower. Pursuant to a Stipulation and Consent Order entered in the foreclosure action on May 18, 2012, Empower was substituted as plaintiff in the foreclosure action.

1

On May 24, 2012, the Debtor and Empower entered into a forbearance agreement (the "Empower Agreement"), which provides that the Debtor shall have the right to satisfy the Loan for an amount which is less than the Foreclosure Judgment at any time prior to the date of the foreclosure sale. Specifically, the Empower Agreement provides in pertinent part:

> [Debtor] shall have the right to satisfy the Obligations for an amount which is less than the Judgment amount at any time prior to the date of the foreclosure sale, upon payment of the sum of $2,250,000.00 plus aggregate amount of all costs incurred by Empower in acquiring the Note and Mortgage and proceeding with the Action through the date that the Obligations are satisfied, including, but not limited, recording fees, investigation fees and all legal fees, which the Obligors, acknowledge including drafting and negotiation of this Agreement, purchase of the Bank's rights in the Loan Documents, the legal action required by the Bank to substitute Empower as plaintiff on the Action and for continuation of the Action through the date of the foreclosure sale (the "Reduced Pay-off Amount" (sic), to be delivered by bank check or wire transfer to Empower;

Empower Agreement, para. 1(a). If the foreclosure sale were to take place prior to November 14, 2012 and Empower was the successful bidder, the Debtor had the right to request an assignment of Empower's bid contract or to purchase the Real Property from Empower for the Reduce Pay-off Amount, plus additional costs and expenses incurred by Empower from the date of the foreclosure sale through the closing date.

In addition, the Debtor acknowledged pursuant to paragraph 5 of the Empower Agreement that all the Loan documents were and continues to be in full force and effect, and have not been modified or superseded by any agreement and that all liens and security interest granted to the Bank remain in full force and effect. The Debtor also acknowledged and agreed that the Loan was secured by a valid, enforceable and perfected first mortgage lien on the Real Property. Empower Agreement, para. 6.

Empower filed a notice of sale on June 19, 2012. On July 19, 2012, the Debtor filed for

chapter 11 relief. After significant motion practice and an evidentiary hearing, on February 12, 2013, the Court entered an order which determined that the Debtor was a single asset real estate ("SARE") entity as defined by the Bankruptcy Code (the "February 12, 2013 Order").

On September 26, 2013, the Court entered an order approving the sale of the Real Property to Concern for Independent Living, Inc. for $5,375,000. The sale is scheduled to close in March of 2014.

On December 12, 2013, Empower filed an amended proof of claim (the "Amended Claim") asserting a secured claim consisting of the following:

- principal and interest at the contract rate of 7.75% totaling $2,543,690.86 as of February 13, 2013;
- $52,569.61 in interest at the default rate subsequent to the entry of the Judgement less any monthly payment of $16,428 made by the Debtor; and
- attorneys' fees in the aggregate amount of $216,575.67 allocated as follows:

  1. Certilman Balin in the amount fo $21,876.45;
  2. SilvermanAcampora in the amount of $170,376.77 as of November 4, 2013;
  3. Solferino and Solferino in the amount of $4,322.45; and
  4. Enrico Scarda PC in the amount not to exceed $20,000.

On January 7, 2014, Debtor filed its opposition to Empower's Motion with respect to the interest rate applied and the reasonableness of Empower's attorneys' fees. Debtor contends that Empower should be limited to the amounts awarded in the Foreclosure Judgment, which are $2,955 for costs and disbursements, $8,959.50 for attorneys' fees, $198,508.65 for prejudgment interest, and post-judgment interest at the statutory rate of 9% under New York law. Debtor argues that Empower is not entitled to the contract default interest rate because upon the entry of the Foreclosure Judgment, the mortgage merged into the Foreclosure Judgment and Empower could only seek interest at the statutory post-judgment rate. In addition, under section 506(b),

3

there is a rebuttable presumption that an oversecured secured creditor's entitlement to default interest is subject to adjustment based upon equitable considerations.

Debtor also asserts that there will be little to nothing left for unsecured creditors once the mortgages and a mechanic's lien are satisfied, and the closing fees and the Debtor's attorney's fees are paid. Furthermore, Debtor argues that the attorney's fees are limited to those incurred by Empower in connection with the "negotiations, preparation and administration of [the Empower] Agreement" but Empower included fees incurred for services beyond those agreed upon under the Empower Agreement and that Empower failed to demonstrate the reasonableness of the attorneys' fees requested in the Amended Claim.

<u>DISCUSSION</u>

A filed proof of claim is deemed allowed unless a party in interest objects. Where an objection to a claim has been made, the court, after notice and a hearing, shall determine the amount of such claim as of the petition date and allow such claim in such amount, unless such claim is for unmatured interest. 11 U.S.C. § 502(b)(2).

Pursuant to 11 U.S.C. § 506(b), an oversecured claim shall be allowed "interest on such claim, and any reasonable fees, costs or charges provided for under the agreement or State statute under which such claim arose." 11 U.S.C. § 506(b). As Empower is oversecured, it is entitled to the payment of interest and any reasonable fees, including attorneys' fees, costs or charges.

I.      The Applicable Interest Rate

At issue is whether under 11 U.S.C. § 506(b) Empower is entitled to post-judgment interest at the contract default rate of 10.75% or if it is limited to the New York statutory

judgment interest of 9% with respect to unpaid judgments.

Under New York law, a mortgage typically merges with judgment of foreclosure and a mortgagor would be limited to statutory post-judgment interest even if the contract default interest rate is higher. *In re Lehal Realty Associates*, 112 B.R. 588, 589 (Bankr. S.D.N.Y. 1990). Notwithstanding the entry of a judgment of foreclosure, parties to a foreclosure action may enter into a forbearance agreement. A forbearance agreement is an executory accord governed by N.Y. GENERAL OBLIGATIONS LAW ("N.Y. Gen. Obig. Law") § 15-501 and embodies a promise to accept at some future time a stipulated performance in satisfaction or discharge of any present claim, cause of action or any mortgage or other security interest in property, and a promise to render such performance. N.Y. Gen. Oblig. Law § 15-501(1). If one party fails to perform according to the terms of the executory accord, the other party is entitled to either assert his rights under the claim, cause of action, mortgage or any other security interest which is the subject of the accord, or assert his right under the accord itself. N.Y. Gen. Oblig. Law §15-501(3).

A forbearance agreement in a foreclosure action often provides for the reinstatement of a mortgage even though a mortgage has merged with the judgment of foreclosure if the mortgagor exercises his equitable right of redemption at any time prior to the actual foreclosure sale and pays the required amount owed. Under New York law, a mortgagor exercising his equitable right of redemption is required to pay into the court, the amount due for principal, interest and the costs of the action, including the expenses of the proceeding.[1] N.Y. REAL PROPERTY ACTION

---

[1] N.Y. R.P. A.P.L. § 1341 provides:
> Where an action is brought to foreclose a mortgage upon real property upon which any part of the principal or interest is due, and another portion of either is to become due, and the defendant pays into court the amount due for principal

PROCEEDINGS LAW ("N.Y. R.P.A.P.L.") § 1341 (2014). A court would stay all proceedings upon the judgment of foreclosure if the payments are made, but upon a subsequent default in the payment of either principal or interest, the court may enter an order directing the enforcement of the judgment for purposes of collecting the amounts owed. *Id. Accordingly, parties are able to negotiate the reinstatement of the note and mortgage by contract after entry of a foreclosure judgment.*

The Empower Agreement provides for the Loan to be in full force and effect, including all liens and security interests that were granted to the Bank. Like most forbearance agreements, Empower agreed to forbear from conducting or closing on the foreclosure sale to allow the Debtor some time to pay the Reduced Payoff Amount. However, the Empower Agreement does not provide for a reinstatement of the Loan upon the payment of principal and interest that were in arrears because the Note has already matured and become due and payable. Similarly, the Empower Agreement does not contain any maturity date as to when the Reduced Payoff Amount would become due and payable. Rather, the parties simply agreed that if the Debtor is able to make the Reduced Pay-off Amount any time prior to the foreclosure sale, or prior to November 14, 2012 if a foreclosure sale has occurred and Empower is the successful bidder at such sale, then the Loan would be satisfied and discharged.

While Empower noticed a foreclosure sale, a foreclosure sale has not taken place because

---

and interest and the costs of the action, together with the expenses of the proceedings to sell, if any, the court shall:
1. Dismiss the complaint without costs against plaintiff, if the payment is made before judgment directing sale; or
2. Stay all proceedings upon judgment, if the payment is made after judgment directing sale and before sale; but, upon a subsequent default in the payment of principal or interest, the court may make an order directing the enforcement of the judgment for the purpose of collecting the sum then due.

of the Debtor's bankruptcy filing nor has relief from stay been granted to permit Empower to schedule one. During the bankruptcy proceeding, the Debtor found a purchaser and now seeks to payoff and discharge its obligation under the Empower Agreement from the proposed sale proceeds. While the Debtor may have reaffirmed the Loan, Empower cannot seek to enforce any remedies it may have under the Loan because the Debtor has not defaulted under the Empower Agreement, which is a separate agreement. The Debtor's only financial default related to its failure to pay the Loan to the Bank for which Empower already has obtained the Foreclosure Judgment.

More important, the Empower Agreement does not state the amount of interest owed or the rate at which the Reduced Pay-off Amount would accrue. It appears that the parties did not specify that interest be payable because they presumed that either the Reduced Pay-off Amount would be paid or Empower would obtain the Real Property as a result of a foreclosure sale. In the meantime, the Foreclosure Judgment continued to accrued interest at the statutory rate that would be payable upon a foreclosure sale. If the parties intended the contract default rate of interest to apply rather than the statutory interest rate, then the parties should have negotiated an interest provision as part of the Reduced Pay-off Amount pending the foreclosure sale but they failed to do so. Empower's entitlement to interest does not arise from any provision embodied in the Empower Agreement or the Loan but rather from 11 U.S.C. § 506(b) and the fact that Empower continues to hold a valid, enforceable judgment which accrues interest at the statutory rate. Therefore, based upon the facts and circumstances of this case, Empower is only entitled to receive interest at 9% rather than interest at the contract default rate.

II.        Reasonable Attorneys' Fees

Empower is also entitled pursuant to 11 U.S.C. §506(b) to claim reasonable attorneys'

fees and costs provided for under the Empower Agreement. Debtor agreed to pay on demand,

Empower's reasonable expenses, including reasonable attorneys fees, incurred by Empower in

connection with the negotiation, preparation and administration of the Empower Agreement.

Empower Agreement, para. 14. While the Debtor contends that Empower's claim for attorneys'

fees should be limited to those incurred in connection with the negotiation, preparation and

administration of the Empower Agreement, the Debtor has also agreed as part of the Reduced

Pay-off Amount, to pay all costs incurred by Empower in acquiring the Loan and proceeding

with the foreclosure action through the date that the obligations are satisfied, including, but not

limited to, recording fees, investigation fees and all legal fees. Empower Agreement, para. 1(a).

When an award of attorneys' fees is sought, the Court must determine what is reasonable

and adjust the fees accordingly. *Field Day, LLC v. County of Suffolk,* CV 04-2202(DRH)(ETB),

2010 U.S. Dist. LEXIS 137430, *8 (E.D.N.Y. Sept. 9, 2010). Debtor objects to the attorneys'

fees on the ground that Empower failed to demonstrate the reasonableness of the attorneys' fees

requested as the Amended Claim does not contain any proffer of retainer agreements, attorney

credentials and qualifications, or proof of reasonableness of the rates charged.

A court may reduce the award of attorneys' fees where a fee applicant fails to submit the

required information regarding its credentials or experience. *Bobrow Palumbo Sales, Inc. v.

Broan-Nutone, LLC*, 549 F. Supp. 2d 274, 281 (E.D.N.Y. 2008). However, the determination of

reasonableness of the attorneys' fees and any reduction lies in the discretion of the court. *ACE

Ltd. v. CIGNA Corp.*, Civ 9423 (WK), 2001 U.S. Dist. LEXIS 17014, *4 (S.D.N.Y. Oct. 22,

8

2001). Under the circumstances of this case, most of the attorneys representing Empower in this matter are known to be highly reputable and competent, and aside from specific charges itemized by the Debtor, the Debtor's opposition on the ground of reasonableness of the fees is not based upon the qualifications of the Empower's attorneys but rather the lack of information regarding their credentials. Unlike fee applications by professionals whose retention are approved by the court, where the legal fees requested are pursuant to a proof of claim filed by a creditor, a court need not examine the qualifications of a creditor's counsel as rigorously as such counsel was not retained pursuant to a court order and a creditor is entitled to its choice of legal representation. A creditor's proof of claim only needs to have sufficient documentation to substantiate that such fees and costs were validly incurred, the amount could be determined, and such fees were reasonable.

Empower has submitted invoices for most of its attorneys from which the Court is able to ascertain what services were provided and the amount charged. While the invoices do not set forth the hourly rate of each attorney, such rates could be determined by the hours spent and the amount charge with respect to the various services. The court may rely on its own knowledge of hourly rates charged in the relevant area for similar services by attorneys of comparable skill, experience and reputation to determine what is reasonable and courts in the Second Circuit have routinely considered rates of both the Eastern District of New York and the Southern District of New York. *Bobrow Palumbo Sales, Inc.*, 549 F. Supp. 2d at 280. The Court's review of the hourly rates charged by Empower's attorneys show that in general these rates are comparable to the hourly rates charged by comparable firms in the area that have been approved by federal courts in this district and in the South District of New York.

A.    Certilman Balin

Empower claims $21,876.45 for legal services rendered by Certilman Balin. Such fees consist of $2,384 for services rendered through May 14, 2012 relating to the formation of Empower, including the preparation of the operating agreement and correspondence in connection therewith, and $19,492.45 for services rendered from April 16, 2012 through June 25, 2012 relating to the negotiation and purchase of the Bank's rights in the Loan and the foreclosure action, and the preparation and administration of the Empower Agreement. The invoice relating to the formation of Empower does not contain any description of the rate charged and the hours spent other than a general description of the services performed, and thus the Court is unable to make a determination as to the reasonableness of the charges. Moreover, it is questionable whether legal services relating to Empower's formation should be allowed as such services do not fall into the category of negotiating and preparing the Empower Agreement, nor directly relate to the purchase of the Bank's interest in the Loan and the foreclosure action. In addition, the Court does not have any information demonstrating that Empower's formation was solely for the purpose of acquiring the Bank's interest in the Loan and the Foreclosure Judgment. Therefore, $2,384 will not be allowed.

Debtor notes that the invoices relating to the negotiation and purchase of the Bank's rights in the Loan and foreclosure action were directed to either Enrico Scarda and/or an entity known as Rise Above Capital Partners, LLC and not Empower itself. Enrico Scarda appears to be a principal or member of both Rise Above Capital Partners, LLC and Empower and both entities have the same address of 38 Kings Highway, Hauppauge, New York. Notwithstanding to whom the legal invoices were addressed, it is clear that the legal services directly relate to the

10

negotiation and acquisition of the Bank's interest in the Loan and foreclosure action on Empower's behalf. Accordingly, Empower's claim for fees relating to legal services provided by Certilman Balin is allowed in the amount of $19,492.45.

  B.  SilvermanAcampora

  Empower claims $170,376.77 in legal fees rendered by its bankruptcy counsel, SilvermanAcampora, as of November 4, 2013 for services rendered from August 2, 2012 through October 29, 2013. Much of Debtor's objection to SilvermanAcampora's fees relating to alleged duplicative billing by a partner and an associate where both attorneys conferred with respect to drafting of court documents and revisions thereto, and telephone conferences where both attorneys participated on such calls, thus resulting in a charge for a partner's and an associate's time. Debtor argues that blended rate should have been charged in those instances and Empower's claim for SilvermanAcampora's fees should be reduced to reflect that.

  In addition, Debtor asserts that Empower was oversecured and that its position was never in jeopardy. Debtor engaged in efforts to find a purchaser of the Real Property in the bankruptcy proceeding and Empower incurred much of its legal fees being over-vigilant and continuously seeking to lift the automatic stay to force a foreclosure sale. "The relevant issue, however, is not whether hindsight vindicates an attorney's time expenditures, but whether at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." *Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992)(*citing Wooldridge v. Marlene Indus. Corp.*, 898 F.2d 1169, 1177 (6th Cir. 1990)). A court may deduct any hours for services that were "excessive, redundant or otherwise unnecessary." *Hensley v. Eckerhart*, 461 U.S. 424, 434, 103 S.Ct. 1933, 76 L. Ed. 2d 40 (1983).

11

Much of the legal fees incurred by Empower during these bankruptcy proceedings arose out of the Debtor's deliberate failure to classify itself as a SARE when it filed its bankruptcy petition, thus necessitating Empower to engage in heavily, contested motion practice, make repeated appearances before the Court, and argue in a prolonged and extensive evidentiary hearing on whether the Debtor was a SARE for bankruptcy purposes. All these fees were incurred to protect Empower's rights under the Empower Agreement, including attempts to lift the stay so it can proceed to a foreclosure sale at various points in the bankruptcy proceeding not only when the Debtor was seeking to find a purchaser but also when there was uncertainty as to whether the sale would close due to ongoing litigation with the Long Island Pine Barrens Society. Accordingly, the Debtor should not be surprised and dismayed at the amount of legal fees incurred by Empower's bankruptcy counsel in preserving Empower's rights, seeking to enforce the Debtor's obligations in order to collect the amount due, and seeking to continue the foreclosure sale as set forth in the Empower Agreement.

Based upon a review of SilvermanAcampora's invoices and the instances of purported duplication alleged by the Debtor, the Court finds that for the most part the fees charged were not excessive. There were instances where two or more partners' time was involved for the same conference, which may appear to be overstaffed. However, on several occasions, SilvermanAcampora has waived the charges for at least one of the partners and there were other instances where Empower did not charge for some of the services provided by the firm. An example of some of the duplicative charges objected by the Debtor is the charges by two partners with respect to a 30 minute telephone conference on December 10, 2012 with the client in which three partners and one associated participated. The charges for two of the partners totaled

$572.40. While the charge for the third partner was waived, the participation of three partners seemed unnecessary and overstaffed. The Court has determined that a reduction of SilvermanAcampora's fees by $6,235, mainly for duplicative services, is appropriate. Based upon the Court's review of the time charges as filed and the objections thereto, the Court determined that Empower's claim for attorneys' fees and costs charged by SilvermanAcampora is reasonable and allowed in the amount of $164,141.77.

C.    Solferino and Solferino

Empower includes in its Amended Claim, $4,322.45 in legal services rendered by Solferino and Solferino ("Solferino"). The invoices were billed to The Crest Group, LLC, Attention: Enrico Scarda at the same Hauppauge as Empower for the period of May 18, 2012 through February 15, 2013. While the invoices may have referenced a different entity as payee, the file clearly relates to Empower's exercise of its rights under the Empower Agreement. A review of the invoices, court documents, including this Court's own bankruptcy docket, reflects that the expenses were incurred on behalf of Empower with respect to Empower's substitution of the Bank as the plaintiff in the foreclosure action, Empower' s preparation and service of a notice of foreclosure sale, and representation of Empower's interest before the bankruptcy court.

While Debtor argues that a $527.45 charge for publication on June 13, 2012 under Invoice Number 94622 appears to be duplicative of the same amount set forth Empower's Notice of Claim and may have been included in Empower's Bill of Costs submitted with the Foreclosure Judgment, the Court has no evidence of such duplication. The Court notes that in the same invoice, counsel performed work relating to a Notice of Sale on the same day and a notice of foreclosure sale was filed on June 19, 2012. The Court has no reason to believe that the

$527.45 charge did relate to the publication of the notice of foreclosure sale.

The Court also takes judicial notice that while Solferino initially represented Empower in the Debtor's bankruptcy case, SilvermanAcampora filed a Notice of Appearance with the bankruptcy court on August 29, 2012 on behalf of Empower. Empower submitted an invoice numbered 94755 for $270 with respect to a "Phone call with Enrico Scarda"on November 30, 2012. There are no other charges or services rendered by Solferino in the days following after this phone call. There is insufficient information relating to this charge for the Court to determine whether there is a duplication of efforts with SilvermanAcampora's services or whether the services were for Mr. Scarda personally or Empower. Thus, the Court will disallow a claim for the $270 charge. While there is another invoice for services rendered after SilvermanAcampora's retention, it is apparent that the $610 charge incurred on February 15, 2013 relates to the calculation of the Debtor's obligation to Empower in response to the Court's February 12, 2013 Order directing Empower to serve by the third business day after the entry of the Order, a statement setting forth a detailed computation of the interest in order for the Debtor to comply with its obligation to pay monthly interest under 11 U.S.C. § 362(d)(3). Accordingly, Empower's claim for legal services provided by Solferino is allowed in the amount of $4,052.45.

D.    Enrico Scarda PC

Empower also seeks to claim up to $20,000 in legal fees charged by Enrico Scarda, PC While bankruptcy counsel asserts that Enrico Scarda, PC acted as real estate and land use counsel to Empower in terms of monitoring litigation the Pine Barrens litigation, as well as reviewing zoning issues and other approval issues raised by the Debtor, Empower fails to produce a copy of any retainer agreement or any invoices describing the services rendered to

14

Empower in connection with the Empower Agreement nor the fees charged. Empower is only entitled to reasonable legal fees actually incurred. Without such documentation, the Court cannot make any determination of the actual legal fees incurred nor the reasonableness of such fees. Accordingly, Empower's claim for the legal fees charged by Enrico Scarda PC must be disallowed.

<u>CONCLUSION</u>

Based upon the foregoing, Empower's Amended Claim is allowed with the adjustments set forth herein. Pursuant to 11 U.S.C. § 506(b), Empower's claim for (1) interest is allowed at the statutory rate of 9% for an unpaid judgment; and (b) reasonable attorneys' fees are allowed as follows: (a) Certilman Balin in the amount of $19,492.45, (b) Solferino and Solferino in the amount of $4,052.45, and (c) SilvermanAcampora LLP in the amount of $164,141.77. Empower's claim for attorneys' fees charged by Enrico Scarda PC is hereby disallowed in full.

So Ordered.



**Dated: Central Islip, New York**
      **March 10, 2014**

**Dorothy Eisenberg**
**United States Bankruptcy Judge**

15